IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                               No. CR 11-1239 JB

RYAN SCOTT DAVIS,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Sentencing Memorandum, filed October 20, 2011 (Doc. 26). The Court held a sentencing hearing on October 25, 2011. The primary issue is whether the Court should impose a sentence of not more than 41-months imprisonment. The Court will grant Defendant Ryan Scott Davis' request and will impose a sentence of 41-months imprisonment.

## FACTUAL BACKGROUND

On April 15, 2011, Davis committed a bank robbery at the New Mexico Educators Federal Credit Union, located at 6501 Indian School Road, N.E. in Albuquerque, New Mexico. See Presentence Investigation Report ¶ 6, at 2, disclosed October 6, 2011 ("PSR"). The Credit Union is a federally insured institution. See PSR ¶ 10, at 3. During the course of the robbery, Davis presented two separate bank tellers with a hand-written note in which he demanded money and intimidated them. See PSR ¶ 6, at 2. The note stated: "Give us the $$ No one will be hurt, Thanks." PSR ¶ 7, at 2. Davis handed the first bank teller two grocery bags and asked for unmarked one-hundred-, fifty-, and twenty-dollar bills. See PSR ¶ 7, at 2. The first bank teller gave Davis all of the bills in her drawer. See PSR ¶ 7, at 2. Davis then told the first bank teller to go get her manager.

See PSR ¶ 8, at 3.  While the first bank teller retrieved her manager, Davis approached a second bank teller and told her that he was robbing the bank.  See PSR ¶ 8, at 3.  Davis handed the second bank teller a plastic grocery bag, which she filled with $100 and $20 bills.  See PSR ¶ 8, at 3.  When the first bank teller returned with the bank manager, Davis shook the bank manager's hand and asked her name.  See PSR ¶ 8, at 3.  Davis advised the bank manager that he only had five minutes to rob the bank and that he had a partner outside with a "package."  PSR ¶ 8, at 3.  He then gathered the money from the second bank teller and left the bank.  See PSR ¶ 8, at 3.

After Davis left the bank, security staff contacted the local authorities and described the suspect.  See PSR ¶ 9, at 3.  The Albuquerque Police Department ("APD") identified the suspect a short time later while he was riding a gas-operated scooter in Albuquerque.  See PSR ¶ 9, at 3.  He was uncooperative and, after refusing to comply with verbal commands, police officers shocked him with a "tazer."  PSR ¶ 9, at 3.  The APD identified the suspect as Davis.  See PSR ¶ 9, at 3.

The Credit Union sustained a loss of $2,274.49 in United States Federal Reserve Bank Notes.  See PSR ¶ 10, at 3.  The amount was recovered when Davis was arrested, along with the note he used to alert bank staff that he was robbing the bank and a tracking device that the second bank teller placed in the bag.  See PSR ¶ 10, at 3.

## PROCEDURAL BACKGROUND

On May 11, 2011, a federal grand jury indicted Davis on one Count of bank robbery pursuant to 18 U.S.C. § 2113(a).  See Indictment, filed May 11, 2011 (Doc. 15).  On August 10, 2011, Davis pled guilty to the Indictment.  See Clerk Minutes, filed August 10, 2011 (Doc. 23).

On October 6, 2011, the United States Probation Office ("USPO") disclosed the PSR for Davis.  The USPO calculates that Davis has a base offense level of 20.  See PSR ¶ 19, at 5.  The PSR then applies a 2-level increase for a special offense characteristic pursuant to U.S.S.G. § 2B3.1(b)(1)

for taking property from a financial institution.  See PSR ¶ 20, at 5.  The PSR also applies a 2-level

increase for a special offense characteristic pursuant to U.S.S.G. § 2B3.1(b)(2)(F) for making a

threat of death.  See PSR ¶ 21, at 5.  The USPO calculates an adjusted offense level of 24 and then

reduced that calculation 3-levels for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1.

See PSR ¶¶ 25-26, at 6.  The PSR calculates Davis' total offense level as 21.  See PSR ¶ 27, at 5.

The PSR notes that Davis has 3 criminal history points, which establishes a criminal history category

of II.  See PSR ¶ 30, at 8.  A total offense level of 21 and a criminal history category of II establishes

a guideline imprisonment range of 41 to 51 months.  See PSR ¶ 47, at 12.

On October 20, 2011 Davis filed his Sentencing Memorandum.  See Doc. 26.  Davis asks

the Court for a sentence of 41-months imprisonment.  See Sentencing Memorandum at 1.  Davis

asserts that he robbed the bank because he was "unemployed, broke, and desperate."  Sentencing

Memorandum ¶ 1, at 1.  Davis represents that he was unable to find a job, because of the poor

economy and because of his prior conviction for second-degree murder.  See Sentencing

Memorandum ¶ 1, at 2.  Davis also suspects that his mental health problems contributed to his

decision to rob the bank.  See Sentencing Memorandum ¶ 1, at 2.  His family confirms that he has

mental health problems that have contributed to both the current and his prior criminal offenses.

See Sentencing Memorandum ¶ 1, at 2.  Davis asserts that he has taken full responsibility for his

conduct in this case and hopes that the United States Bureau of Prisons ("BOP") will offer him not

only vocational training, but mental health counseling.  Sentencing Memorandum ¶ 2, at 2.  Davis'

counsel, Assistant Federal Public Defender Alonzo J. Padilla, represents that he believes Davis

suffers from "some type of mental health problem," but that Davis has been "resistant to being

diagnosed by a psychologist or psychiatrist."  Sentencing Memorandum ¶ 2, at 2.  Davis asserts that

a sentence of not more than 41-months imprisonment is reasonable and sufficient, but not greater

than necessary to punish Davis. <u>See</u> Sentencing Memorandum ¶ 4, at 3-4. In several letters sent to the Court, Davis' friends and family suggested that Davis robbed the bank to return to prison where he felt safer. <u>See</u> Letter from Diane E. Davis-Bales to the Court at 10 (dated October 1, 2011), filed October 20, 2011 (Doc. 26-1)("Davis-Bales Letter")("I believe that he felt he had no other options, that he refused to be homeless and that he was 'institutionalized' and felt safer in prison. He mentioned that this would be federal instead of state. He said he had weighed his options, and this seemed like the best one . . . [sic]"); Letter from Kathleen Bouloy to the Court at 6 (dated September 25, 2011), filed October 20, 2011 (Doc. 26-1)("Bouloy Letter")("He was hoping to go back to where he felt most comfortable and where he belonged."). His father also suggested that Davis is bipolar. <u>See</u> Letter from Brent L. Davis to the Court at 3-4 (dated October 5, 2011), filed October 20, 2011 (Doc. 26-1)("Davis Letter"). The United States did not file a written response to the Sentencing Memorandum.

The Court held a sentencing hearing on October 25, 2011. At the hearing, Plaintiff United States of America stated that Davis pled guilty without the benefit of a plea agreement. <u>See</u> Transcript of Hearing at 4:13-17 (October 25, 2011)(Torrez)("Tr.").[1] The United States orally moved for a third-level reduction for acceptance of responsibility. <u>See</u> Tr. at 5:3-5 (Court, Torrez). The Court asked Davis whether he accepted responsibility for robbing the bank. <u>See</u> Tr. at 5:6-9 (Court). Davis responded that he did accept responsibility. <u>See</u> Tr. at 5:10 (Davis).

Davis then spoke in support of his Sentencing Memorandum. Davis noted that many of the letters written on his behalf describe him as big-hearted, intelligent, hard-working, motivated, and family-oriented. <u>See</u> Tr. at 6:3-7 (Padilla). Davis noted, however, that they also describe him as

---

[1]The Court's citations to the transcript of the hearing refers to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

childlike and unfocused. <u>See</u> Tr. at 6:7-10 (Padilla). Davis pointed the Court to the Bouloy Letter in which Kathleen Bouloy, a member of Davis' synagogue, describes him as a sweet young boy in a grown man's body who has seen so much ugliness in his life both before his first stint in jail and while in custody on his prior offense. <u>See</u> Tr. at 6:18-20 (Padilla). Davis recognized that he will go to prison for a lengthy period, but asked that the Court sentence him at the low-end of the guideline imprisonment rage and recommend to the BOP that he serve his sentence near his family in Arizona. <u>See</u> Tr. at 6:22-7:4 (Padilla). Davis also represented that he has some undiagnosed mental-health issues. <u>See</u> Tr. at 7:18-8:1 (Padilla).

The Court asked Davis if there was anything he would like to personally say to the Court. <u>See</u> Tr. at 8:7-10 (Court). Davis indicated that he would prefer to serve his sentence in Arizona. <u>See</u> Tr. at 8:11-12 (Davis). The Court then asked whether Davis agreed with his mother's representation that he robbed the bank because he wanted to return to prison. <u>See</u> Tr. at 8:16-22 (Court). Davis responded that he thought that statement was partially true, and that he considers himself partially institutionalized and not adjusted to society. <u>See</u> Tr. at 8:23-25 (Davis). The Court asked whether Davis felt that, during the times he was on parole, he was slipping between the cracks. <u>See</u> Tr. at 9:1-3 (Court). Davis agreed that was how he felt. <u>See</u> Tr. at 9:4 (Davis). The Court asked whether Davis robbed a federally insured bank to get sentenced to federal prison, rather than to a state facility. <u>See</u> Tr. at 9:5-7 (Court). Davis stated that was why he robbed a federal bank. <u>See</u> Tr. at 9:8 (Davis). The Court asked what Davis wanted to get out of federal prison. <u>See</u> Tr. at 9:9-11 (Court). Davis said that he was not sure what he wanted out of federal prison, but he would see whether it was different than the New Mexico state prison system. <u>See</u> Tr. at 9:12-14 (Davis). Davis' counsel stated that he hoped that the BOP would be able to provide Davis with some training and allow him to take college or vocational courses. <u>See</u> Tr. at 9:15-19 (Padilla). The Court asked

Davis where he would like to be in life when he is done serving his prison sentence. See Tr. at 9:20-25 (Court). Davis responded that he did not know and that he needed a few years to figure out the answer to that question. See Tr. at 10:1-2 (Davis).

The Court then gave the United States an opportunity to respond. The United States asserted that it was deeply troubled by Davis' demeanor before the Court. See Tr. at 10:6-8 (Torrez). The United States contended that Davis does not appear to fully appreciate the seriousness of his offense and stated that it was concerned with the idea that he specifically robbed a federal bank to avail himself of the federal correctional system. See Tr. at 10:8-13 (Torrez). The United States argued that a guideline sentence is appropriate in this case, but did not specify a term of imprisonment. See Tr. at 10:14-17 (Torrez). The United States noted that this is Davis' second crime of violence and that, should the defendant commit another such crime, he will likely be designated an armed career criminal or career offender. See Tr. at 10:18-23 (Torrez).

Davis asserted that he was doing no more than being honest with the Court. See Tr. at 11:4-5 (Padilla). Davis' counsel, Mr. Padilla, also asked that the Court take into account that he likely suffers from some undiagnosed mental-health issues. See Tr. at 11:5-9 (Padilla). Mr. Padilla asserted that Davis has been resistant to being diagnosed or receiving treatment, and that he hopes Davis will receive treatment while incarcerated. See Tr. at 11:10-15 (Padilla). Mr. Padilla represented that Davis needs to be involved in counseling so that he does not reappear before the Court and so that he feels like he can survive outside of prison. See Tr. at 11:16-12:1 (Padilla).

## ANALYSIS

The Court has reviewed the PSR's factual findings, and, there being no objections to those findings, the Court adopts them as its own. The Court has also reviewed the PSR's application of the sentencing guidelines, and, there being no objections to those calculations, the Court will adopt

those as its own as well.  In reaching its sentence, the Court has considered not only the guidelines, but the factors set forth in 18 U.S.C. § 3553(a).  An offense level of 21 and a criminal history category of II results in a guideline imprisonment range of 41 to 51 months.

Davis committed a bank robbery on April 15, 2011, in which he took $2,724.49 in United States currency by way of intimidation.  The Court has considered the guidelines, but in arriving at its sentence has taken into account not only the guidelines, but other sentencing goals.  Specifically, the Court has considered the guideline sentencing range established by the applicable category of offense committed by the applicable category of defendant.  The Court believes that the punishment set forth in the guidelines is appropriate for this sort of offense.  The Court then considered the kinds of sentence and range established by the guidelines, and, after careful consideration, determines that a sentence at the low-end of the guideline imprisonment range is appropriate.  The Court will sentence Davis to 41-months imprisonment.

The Court concludes that this sentence is sufficient to reflect the seriousness of the offense, promote respect for the law,  provide just punishment, and avoid unwarranted sentencing disparities. The Court also believes that this sentence will provide general deterrence to those who might be tempted to rob a federally insured institution.  Davis, however, presents a unique circumstance. While the Court has always heard of people who feel more comfortable in an institution than in society, Davis may be the first person that the Court has sentenced who felt that way.  The Court is concerned about providing adequate specific deterrence and protecting the public, but until Davis increases his self-esteem and gains societal skills, it is unlikely that any sentence short of life will adequately deter Davis and protect the public.  The Court believes that some of the Court's recommendations to the BOP as well as some of the conditions that the Court will require as part of supervised release will provide Davis with some needed education, training, and care to avoid this

problem from occurring in the future.  To go further up into the guideline range would be to overemphasize the full factor of protecting the public and the half factor of specific deterrence, while the low end sentence reflects all other factors well and adequately.  The Court usually sentences at the low end of the guideline range, unless there is an aggravating circumstance, because some predictability helps the parties in anticipating what the Court will do and sometimes helps the defendant decide whether to plea or to go to trial.  There are no aggravating factors related to this robbery, which would counsel in favor of moving to the higher end of the guideline range.  The Court believes that sentencing Davis at the low end of the applicable guideline range avoids unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct.

The Court believes that this sentence fully and effectively reflects each of the factors embodied in 18 U.S.C. § 3553(a).  While the Court's task, as a district court, is not to arrive at a reasonable sentence -- it is to come up with one that reflects the factors in 18 U.S.C. § 3553(a), see United States v. Conlan, 500 F.3d 1167, 1169 (10th Cir. 2007)("[A] district court's job is not to impose a reasonable sentence.  Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2)." (citation omitted)) -- the Court believes this sentence is reasonable.  And perhaps most important in this calculation, the Court believes that this sentence is sufficient without being greater than necessary to comply with the purposes of punishment Congress set forth in the Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1987 (codified as amended in scattered sections of 18 U.S.C.).  Accordingly, the Court will sentence Davis to 41-months imprisonment.

**IT IS ORDERED** that the request in Defendant's Sentencing Memorandum, filed October 20, 2011 (Doc. 26), is granted.  The Court sentences Defendant Ryan Scott Davis to 41-months

imprisonment.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Kenneth J. Gonzales
  United States Attorney
Raul Torrez
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Alonzo J. Padilla
  Federal Public Defender
Federal Public Defender Office
District of New Mexico
Albuquerque, New Mexico

      *Attorney for the Defendant*